Page 4, 18-0302, Beelman Truck Company v. Workers' Compensation Commission. There's some confusion out there. We're taking a case out of order. Okay. Thank you. Counsel, you may proceed. Good morning. May it please the Court, Attorney Ackerman. My name's Ken Beeman. I represent the employer, Beelman Trucking, in this matter. As you are aware, there are various issues in this case. The first one I want to talk about is notice. We know in a repetitive trauma claim that notice is still required. In a repetitive trauma claim, an injured worker still has to prove an identifiable accident. And the Commission found that there was sufficient notice given. So, correct. The manifestation they found was accurate, which was the first date that the employees sought medical treatment, on March 26th of 2010. Regarding the issue of notice, I think it's not in dispute as to the facts regarding this. The injured worker works as a truck driver. He's indicating that, actually, a day prior to the manifestation date, he calls in the terminal manager and reports that his shoulder's injured. The following day, after he gets medical treatment, he walks to the dispatcher and indicates, you know, I'm going to need some time off for this shoulder injury. At no time does Petitioner, in this case, indicate that his shoulder injury is working. Well, the Commission, there was a colloquy between his supervisor and the injured worker where, according to the transcript, he said, Did you tell Edgar? And he said, Yes, I told Edgar. I told him my shoulder was bothering me and that he said to go in and see what they have to say. I wondered if I needed to fill out paperwork. Why would he be filling out paperwork if this injury was unconnected to his employment? As you see in this case, the paperwork was the short-term disability policy benefit, which he filled out shortly thereafter. And consistent with all the other contemporaneous documents, that short-term disability form that was completed by the injured worker indicated that his shoulder injury was not working. This is consistent with what he told Dr. Kahn, his primary care physician, when he first saw treatment. So let me go over that again. He's filling out paperwork. He says he needs to fill out paperwork in connection with him leaving work. And you're saying that this has nothing to do with the job when he says, I have to fill out paperwork here, don't I? I'm saying it has everything to do with the job. It has to do with his benefits that are provided to him with his employment, which are the short-term disability. So the Commission can't infer that that was notice of a work-related accident, because that's what they did. Well, it looks like it, but it's nonsensical when you look at the chain of events. When you look at that same dispatcher who filled out an individual driver's report on three days and indicated that this was not work, not WC. So everything's consistent. He sees Dr. Kahn on the manifestation date, denies an accident. Shortly thereafter, he fills out short-term disability paperwork, denies an accident. He goes, the driver report indicates not work count. He fills out an intake form with the orthopedic surgeon, Dr. Walters, the surgeon in this case, and denies that his injury is work-related. Everything is consistent as to this not being work-related. At no time does he indicate that his shoulder injury is related to his employment. At no time. And so you're right. The arbitrator, I guess you can infer, but the arbitrator seems to think that Section 6C of the Act requires notice of an injury. It's not an accident. So I get Arbitrator Lindsey's decision. We appeal it to the Commission, and I ask specific questions. I understand what you're saying. You're making a cogent argument. But this is a question of fact, isn't it, for the Commission to decide? This is a factual determination as to what he said was sufficient to tie it into a work-related accident. I think when you look at the circumstances, that inference, that when he said, you know, go see what the doctors have to say and fill out paperwork, when you look at all the contemporaneous documents, a chain of event argument, it's inconsistent with everything else for them to make that leap of faith and that stretch to say that this somehow was him saying it happened at work. And we would have to find that an opposite conclusion was clearly apparent to the one the Commission drew, correct? Well, when you look at all these contemporaneous medical documents, when you look at the short, you know, when he said complete the paperwork, it was a short-term disability paperwork. If he, you know, if you infer that it was, how did he put it on all these documents? Why would he list it on the short-term disability? Why? Because he's a layperson. He's not familiar with the cop law. Under the Act, he's got, you know, it doesn't say, you know, exceptions apply. It says notice of an accident must be reported within 45 days. This case is very similar to the Lowell White case. And it's kind of eerie how similar it is. Both repetitive trauma cases, both cases involving a shoulder, both cases where the injured worker completes it. In the Lowell White case, it was sickness and accident benefits. The employer was aware of an injury, but all these contemporaneous records indicate that it was not work-related. I take it you're not just all in on the causation issue, the notice issue? No. You've raised a number of other issues. The next issue I'd like to speak about is, you know, really what is repetitive trauma? It's our position that the Commission's finding is clearly against the manifest way of the evidence because under any definition, this gentleman's work was not repetitive. Well, you've got Dr. Cohen to support you, correct, to be blunt? So Dr. Cohen addresses the causation issue. I think what I want to talk about right now is the accident issue. So what is repetitive trauma? The facts, I think, are undisputed. He's a truck driver. He has a rally boost in farmers' bills to ADM indicators. He gets paid by the vote. He's a truck driver. I don't know if anyone can argue that anything but this gentleman's job, 99% of it is driving a truck. Well, he's got a crank. Is there any dispute he's got a crank in his mechanism? He's got a crank. There's no dispute. Five, six times a day. So when you look at the evidence, depending on who you believe, it's between two to five minutes in a 12-hour shift. And this cranking is not a consecutive act. It's broken up based on the votes, right? So this is not repetitive trauma. Okay, well, you're arguing that. You've got Cohen clearly on your side. The claimant presents Dr. Walters, who disagrees with Cohen's conclusion. Correct? Dr. Walters addresses causation. And he said yes. And there's a dispute as to how bad this gentleman's left shoulder was prior to his employment with Healdman. Okay, so tell us, Tony, how do we decide the commission couldn't believe Walters had the problem? How do we make that decision? On the issue of causation. But to get there, you have to believe that his job is repetitive. That's where it fails. His job is not repetitive, so you don't meet the accident burden before you address causation. So how many times a day is he polling votes? So, you know, from Farmersville to AD Indicator, it varied, right? Petitioner testified it six to seven times, with mathematically it's not possible. One of my witnesses indicated two times. Another witness said he'd do it in three, depending on how efficient they are at ADM, how quick, you know, that they can sign you in and get things done. But, you know, and it's not, you know, you're not cranking that cover every time you do a vote, right? It's two to five times. You're cranking to cover and you're cranking to uncover? Right. You know, when you're loading the ash, the cover has a hole when the trough comes down, right? So it varies, but between two to five times an issue. It wasn't that easy. It isn't like you turn the crank once, right? No, I agree it's not easy, but it's not repetitive. Well, Walters would disagree with that. It's believable that a specific accident could cause this, but it's not repetitive. The application alleges cranking parts was a cause. How many times would you have to crank it for it to be repetitive when you're updating it? More than six, ten, fifteen, twenty? Certainly more than five minutes in a 12-hour show. It's not five minutes. It's how many times you cranked it. It's not how long it took. Yeah, and it's broken up. How many times would you have to crank it, tell me? Much more than what you did. What does that mean? Do we decide cases on much more, much less? I mean, when you put it on a spectrum here, right? When you look at where you're at, you're so far over here. If this is considered repetitive work, then injured workers could be filing repetitive trauma claims because everybody's job would be found to be repetitive. Why would it be repetitive unless they were doing the same thing multiple times? And it's the same things, plural, that caused the injury because that's what the doctor said. He didn't say the activity of cranking caused it. He said with the activities, plural, that he was performing. So plural means cranking more than once, right? Sure. He cranked more than once. How many rotations for each time he had to hit? Would this meet anyone's definition, though, of this is repetitive? Well, it evidently met the commission's definition because it weren't a benefit site. Correct, and that's why I'm here to say that I know of no other case where you can look at a case where the court has filed repetitive trauma and relate it close to his work activities to say that it's repetitive. If that's the definition of repetitive, then injured workers should be filing repetitive traumas anytime they experience pain. What is the definition of repetitive? More than once on a regular basis? Is that the definition of repetitive? You know it when you see it. Well, I know, you know. My name's no Potter Stewart, so. For forced processing, right? They're doing it. I mean, to even argue that this is close to being repetitive, I would disagree. The other issue is the penalty. Would it be repetitive if the claimant says, I'm driving this tractor and it's a standard shift and I make so many, you know, so many short hauls and I'm always shifting with my shoulder. Would that be repetitive? If he's doing it 99% of his time, it could be repetitive. If you're driving a truck and reporting a shift and you're doing that 10 hours out of the day, that to me would be a lot closer to fitting the definition of repetitive than two to five minutes in a 12-hour shift. The last issue I wanted to discuss is the 19-0 penalties. You read the brief. To me, it's almost like responding that you're going to file an appeal, we're going to penalize you before your appeal. Is that what the case law says? I mean, is the mere fact that litigation is ongoing, does that mean a delay is reasonable? To me, it does. If it didn't, then it's a penalty. My client is penalizing for disagreeing. Well, if your argument was correct, then every respondent would merely file an appeal and cut off the penalties, and that doesn't make any sense either. The question is, is it good faith? I think the commission, the arbitrator, consistently said that it was good faith. It wasn't unreasonable and not spacious. That this was a delay penalty. And if I'm successful in my appeal, it doesn't seem right that we would get penalized and have to pay penalties on pursuing our rights to appeal this case. I would ask that the commission's decision be reversed on the issues of notice of her accident. Thank you. You have time to move on. Thank you. Counsel, you may respond. Thank you. I'll make this a point. Counsel, I want to discuss a little bit about how the first injury, the first decision is violated by the second decision. Is that your law of the case? Yes, it is. So, the first decision awarded a functional offense without a written MRI and a book rehab. And I think you could argue that, well, the FCE and the MRI should be awarded, but the book rehab can't, from a practical standpoint, if this second decision, the 4700, will stand. The reason is, book rehab is a process. And so, if I go to a book rehab counselor, the counselor will sit down with me, figure out what's an appropriate resume and give me a bunch of places to apply, and then meet with me weekly for a period of time until presumably I get a job. This can be a long period of time. And as it stands now, there's a 40% mandatory rule. And if I go to a board of counsel and that's the final award, and say, you know, I don't book rehab now, they say, sure, we'll give you five minutes for the book counselor. And I got stuck, right? No book rehab really occurs if the second decision stands. So that's why I think that the second decision violates the law of the case. Let me ask you a fundamental question, as I understand it. In order to be the law of the case, there has to be a final order, non-reversed final order. If you don't have a non-reversed final order, how does the law of the case apply? In this instance, it was remanded, was it not? The case was remanded for a hearing on permanence. But the first decision, which was final, because it went up to the commission and back down, became the final decision. All the case law says that. It said that they're supposed to provide book rehab. The case was remanded, went back down, and that was the final decision? The second one was the final decision, correct. And then the second one says 40% as a whole, which eliminates his ability to get book rehab. Yeah, but that's not the law of the case. You're arguing it's the law of the case. What is the law of the case? Which decision is the law of the case? The first one? That's not final. It's final because the statute says so. But it doesn't become final until the second order is issued. So it can't be the law of the case to the second order. The statute says that 19B is conclusive. But it's not a final order unless it terminates all the rights under 19B and it's affirmed by the circuit court. So the problem that you have is you're suggesting that the first decision of the commission became a final order when the circuit court issued its second decision. Is that what you're saying? No, I'm saying that the first decision is final when the commission demands it back to the arbitrator for the second hearing. Well, how could it be final if another hearing is contemplated? Because that's what the statute says. It says that 19B shall be final except for anything that concerns permits. And that's what the statute said. I put that statute in my brief. And that's what it says. The statute says it. That's why. Which order is final? The first order is final. I understand that. It's final because the commission ruled? Correct. And so, for instance, if you have an arbitration decision on the 19B and it doesn't get reviewed, that's final at that point. And if you review it, it's final when it comes back down when they make the decision. When the commission decides. When the commission decides. And that's what happened on this one. What did the commission do beyond that? Anything on that first arbitration? They ordered a vote rehab. They found TPD. They found it defensible. But, you know, if you order an FC, you order a vote rehab. That was all final when the commission decided that back in 2015. So if it gets remanded, they can't change anything you're saying? That's what the case law says. That's exactly right. But if it gets remanded, they cannot violate the first order. Now, they can make a fine of impermanence. But by doing 40% on a whole, they can't. And there's a case specifically, in fact, me and Neal, it was a case with Aikman, and the case said the guy goes in and he gets benefits on the first one. What's the name of that case? Well, the name of that case was Ming. Ming. Ming Autobi. Okay. And they said what happened was the first time he gets benefits, and then they come back in on the second hearing, they introduce evidence of fraud. Right? It's going to invalidate the decision. So Neal is the authority on that one. She said we're going to validate it. We lied about the application process. We lied about another injury we hadn't mentioned before. And so she invalidates the decision. The appellate court said you can't do that. The commission said you can't do that, so did the appellate court, because the statute says it's final. The first decision is final. It's all matters except for impermanence. And so the appellate court reversed and said you can't even invalidate it on fraud, the circuit court has to do it. So you have to file a petition, and the circuit court can validate it based on fraud. The first decision is final. And so that's why it violates the law of the case. Okay. What about your penalties argument? My penalties argument, I have two cases that say people cannot, that respondents can't just wait on a final argument, on a final decision and try to, you know, negotiate it. And that's what McMahon says. McMahon reversed the situation where there was no payment. In that situation, they had a pretty good excuse argument. And that was that the defendant and the insurance company in the case were having a dispute as to who can pay. So the defendant doesn't pay and said, well, we're trying to figure out what's going on with this coverage issue. The Supreme Court said, McMahon, you can't do that. You're supposed to pay. You had a final decision. That decision is final. And if it's final, you've got to pay. And there's no ifs, ands, or buts about it. You can't wait until it goes up on appeal to do that. And so McMahon says that. All right. Well, let's assume you're accurately quoting a case law. In this case, the other side is going to argue they had Cohen's opinion, and that provided an adequate good faith basis for disputing liability. So what's your response to that? They did until there was a final decision. So once the commission rejected that, and there's a decision by the commission on the 19B, then they've got to pay. Now, I agree with you. Did the commission award vote rehab, or did the arbitrator award vote rehab in the first decision? Well, the arbitrator awarded vote rehab in the sense that she said, we remind the respondent of its duty, obligation under the code and the rules. And then the circuit court said, the commission ultimately said, you didn't address vote rehab and remanded it back to the arbitrator, didn't they? The circuit court? No, the commission. The first appeal to the commission. What did they say about vote rehab? They left that standing. The commission left that standing. That's why I'm here. All right. And what did the circuit court say when it went to the circuit court, and the court said this case is premature and sent it back to the commission? Why did they say that? Because it wasn't final. Because it hadn't gone through the whole process. Or did they say it was because the issue of vote rehab hadn't been addressed by the commission and they remanded it? I don't believe that. They didn't say that? No. I think what they said was it's not final under the case that says that you have to have permanence addressed before it can go up to the circuit court. It would have been easier if your opponent were to file the circuit court's decisions with his appendix. The Supreme Court is the case that you're talking about. I'm looking for the circuit court's reasoning. The circuit court's reasoning, if I recall, I have to be implored, just says it is not a final decision in the sense that the court can hear it until there's an award on permanence. That's what the catering says. Well, that's not correct. On a 19B, the circuit court has jurisdiction, even if permanence hasn't been decided, if it disposes of all the issues raised in 19B. I mean, there's no requirement that permanency be decided before the circuit court has jurisdiction over an appeal from the commission on 19B. It makes no sense. Well, that's what the law is. It's not the law. We review these every day. We probably have 15 of them up here today. Well, the Supreme Catering says that that's what the court ruled, the trial court ruled, and the trial court said the case didn't have to get permanence. So you're saying they can have partial final orders and not partial final orders. That's what you seem to be saying. I understand what you're saying. If it's not a 19B and there's no permanency award made, then you're right, it's not final. But if it's 19B, what does Thomas say? What does the Thomas decision say? Well, Thomas says that you can appeal to 19B, it's a final order, it gets reviewed, and then gets remanded back to the commission to decide permanency, or additional TTD, or additional medical, whatever additional there is. That's not what the court did in this case. The court relied on Supreme Catering and kicked it back down because there was no final permanence. Now, if there's more law decisions... I mean, my notes indicate that it was kicked down because the court found that the issue of vocational rehabilitation hadn't been addressed, but unfortunately your opponent didn't supply me with the order, so I can't quote it to you. My recollection is that it may have been Supreme Catering. So anyway, there's two cases to say that. So what in the first arbitration was said about vocational rehab? The judge said... The arbitrator. The arbitrator, I'm sorry. The arbitrator said that the respondent is reminded of its obligation under... And that's a finding? That's a decision? And then right after that, the judge says, and this is a quote, if I remember, the assessment needs to be done, period. That's it. Okay, so you've got somebody referencing an obligation, and then an assessment needs to be done. How is that in order, quote unquote, for voc rehab? Well, I mean... Where's the order? Well, the judge says it has to be done. Well, we're reminding you of your obligation, but your obligation only kicks in if he has a right to voc rehab. And the court hasn't made any decision that he had a right to it. Only reminded him they have an obligation under the law. So what? Well, possibly she did. I mean, that's what I'm arguing about. Because the commission said you have an obligation, and the respondent needs to provide. I don't know what else you can ask for. You can tell them, provide it. The commission did that... She did. The arbitrator said that. The commission just adopted the arbitrator's decision? Correct, on that issue, yeah. On that issue. Right, so the commission did say it has to be done. And to me, that's the order. I suppose if they didn't use the words, you are hereby ordered. But otherwise... Why don't you... They indicated it had to be addressed. But addressing it isn't the same thing as ordering it. I think we're conflating the two terms. No, it says it has to be done. The next sentence, the very last sentence in that... Well, what has to be done? It has to be addressed. It says the assessment has to be done. Okay, so your argument is, to put us at bay, is that an assessment can only refer to vocational rehab, right? No, it's in the same paragraph. She's talking about the whole thing. No, I'm sure it means something else, but she says that assessment needs to be done. That's the very last sentence. What's the assessment? Define for me what that assessment means. It's a vocational assessment where the vocational person sits down with the person and then tries to come up with a plan to get the person back to work. And so that, therefore, the subject of an assessment is vocational rehab. Right. And your argument is that was addressed and implicitly ordered? It was explicitly ordered. The judge said it has to be done. The assessment. The assessment has to be done. And what those assessments do is when you've got a guy who is illiterate, at roughly 15 years old, they try to come up with a way to get him back to work. And that's going to be a lot of work for a 15-year-old illiterate cop. And so that's why I think that it needs to be remanded back down, because he never got the benefit of the help he deserves through vocational rehabilitation. And if you don't give him that, he's going to have a very difficult time getting employment. And that's what the whole point of this is, to get him vocational rehabilitation. And that's what that order was. And that's why she said it must be addressed. It wasn't addressed. It must be done. She said it has to be done. Those are the words she used. I didn't make those up. First, she reminded them of their obligation. Then she said it has to be done. I'll put the language on the bottom. Okay. Do you have the Bible? No. Yeah. Oh, yeah. Right. Okay. We're talking. I'm sorry. Counsel, do you understand the importance of following Supreme Court Rule 342 and giving us the orders we're entitled to in your appendix? Okay. Well, next time, give us what we're entitled to, will you? Okay. So in the absence of that, obviously this is hanging. I'm not sure we understand his position about this voc rehab. What's your understanding as to whether or not it was ordered? A vocational assessment was ordered by arbitrator Lindsey and then adopted by the commission, contingent on the results of an FCE and the MRI. But that vocational assessment has been done by their expert, the Lord Gonzalez, who the court found to be responsible for paying for the bill. So this vocational assessment has been completed. Now, I argue whether it's accurate. The commission noted the flaws in that vocational assessment, but this gentleman had the vocational assessment. So what about his argument, then, we're going round and round, on the law of the case? So I respectfully disagree with the attorney. Why? Consistently throughout this point, the difference as to whether the commission's decision is final, when I have yet to exhaust my appeals, besides the MIM case, I understand the MIM case. There was a decision issued, respondent did not file an appeal, and then they didn't pay the decision, the order. If that was the case here, and he didn't file an appeal, and we didn't exhaust our appeal, we're in a penalty situation. We've got to pay it. But the fact that I have not exhausted my appeal, I'm here today arguing notice and accident and causation, I disagree as far as his terminology with this being final when I get to exhaust the appeal. I also take issue, and this has been briefed, as far as counsel describing his point as being illiterate, that there has been an issue in this case. I think it's clear that the commission has found contrary, based on numerous inconsistencies, going back and forth as far as allowing additional testimony. We don't need to get into that because it's not relevant to the discussion here. So basically, as I'm trying to call out the essence of your argument, you're saying that because it was remanded, it was not a final order in anything. Correct. Okay, and the penalties, what about his argument he should have got the penalties? Well, this was addressed in the commissional interim, and said our position was not unreasonable or vexatious. Because of Cohen? Not just Cohen, but I think for the reasons I've talked about with notice and accident, Cohen, to me, is more of a causation issue also. But that gives us the basis for a reasonable dispute. Thank you. Thank you, counsel. Counsel, you have short time for everybody. Thank you. The language of the decision of the commission is, as far as mine is, obligations under the law. And I'm not going to go into that. But this assessment needs to be done. That's the last sentence of the paragraph. That's more, you know, if the judge tells me this has to be done, I do. And if I don't do that, I can hear I've got a problem. Is ordering an assessment for vocational rehabilitation the same thing as ordering vocational rehabilitation? No, I know you're right. But they remind me of their obligations. But you requested, according to the arbitrator's decision, an order for vocational rehabilitation. Correct. And they never ruled on it. They only said do an assessment. They didn't order a vocational rehabilitation. And they didn't deny it either. Reminded that it's obligations under Rule 710.10, which says that they have to, if he's going to be off more than 120 days at a time, they have to prepare an assessment. And then they have to figure out what to do with it. The problem is, the only thing she ordered was the assessment. She did not order vocational rehabilitation. But your petition requested vocational rehabilitation. So she had a rule on it. Either say, yes, you're entitled to it, or no, you're not entitled to it, because of this, and go do this, and maybe we'll look at it again. But the only thing she ordered was the assessment. And she reminded the circuit court? Forget about what she reminded them. She ordered the assessment only. So the question becomes, was the circuit court correct the first time when they said this is, when they remanded this case, the circuit court remanded this case, because the commission had not addressed vocational rehabilitation. They only addressed an assessment for vocational rehabilitation, not your request for vocational rehabilitation. You did request vocational rehabilitation, didn't you? I'm going to look at it. The last decision voids my ability to get into vocational rehabilitation. Because that was the final appealable order. Right. No, the second one was the final appealable order. Yeah, and so it came up to the courts. Right. And I'm in a situation... So in that particular case, there'd be no law in the case. No, no, no. Yes, yes, yes. The commission did not dispose of your request for vocational rehabilitation. Is that a yes or a no? Is that a yes or a no? The way I understand... Did you request vocational rehabilitation, yes or no? Yes. Did they rule on your request for vocational rehabilitation? Sort of. Sort of. Sort of. They ordered an assessment. They didn't rule on your request. So the circuit court was correct when they said, because the commission adopted, the commission did not rule on your request for vocational rehabilitation. So in that particular case, they said, I don't have a final order to appeal from. That means the commission's order wasn't final. And if the commission's order wasn't final, you have no law in the case. Counsel, you're just wrong. Period. I mean, it's just that simple. Let's just end it at that. We do this all day. 19B is only a final order when all the issues raised in the 19B have been disposed of, even though, under Thomas, the case has to be remanded back by the commission to determine permanency, additional TTD, additional medical. It's only final when all the issues raised in the 19B have been disposed of. You raised vocational rehabilitation, wasn't disposed of. Commission order is not final. No law in the case. I do have a question. You do have some time remaining. Yes. You received a copy of the arbitrator's decision for a set assessment, right? Right. Okay. Is there a procedural process one can engage in for clarification? Yeah. That's part of my point, is that if you go back down and you get an assessment, and then the arbitrator, I mean, the vote counselor then does it. Oh, you missed my question. I'm sorry. Clarification as to the language, what does it mean? What have you ordered? I asked for vocational rehabilitation to be considered and to be ordered, and instead I've got this language where you ordered assessment. Is there a mechanism you can go to the arbitrator to ask for a, quote, clarification of the, quote, ambiguity? If there's a 19-and-a-half, you can go for clarification of, you know, a title, but not really. Okay. I mean, there's not really a very good process. You don't like it. Okay. That was my question. Thank you. Thank you. The court will stand in brief recess.